here to give you here to give you this honorable health report for the second judicial difference now back in session to assume adjournment. The Honorable Barbara E. McLaren presiding. Please be seated. Your Honor, this case on the topic, 2016-1086, in re Estate of Stanphill, deceased exactly the plaintiff's appellant, E. Roy Ford, and doing business with Rockwood Mental Health and Rockwood Mental Hospital, doing business with Rockwood Mental Health Systems, defendants and athletes. Presenting on behalf of the plaintiff's appellant, Ms. Roy A. Vandermond. Presenting on behalf of the defendants and athletes, Mr. Hugh C. Griffin. Stand your lawyer. Good morning. May it please the court. I'm Lori Vandermond on behalf of Zachary Stanphill and the Estate of Keith Stanphill. This issue is up before Your Honor with regard to our appeal asking this court to reverse the decision of the trial court in the judgment on the special finding or special interrogatory after the trial and general verdict in favor of the plaintiff on this case. We believe there's several reasons that support a reversal of the trial court. First off, that the answer to the special interrogatory was consistent with the general verdict. Secondly, and in the alternative, that the special interrogatory should never have been given because it was in an improper form. And thirdly, because I don't really know how to articulate this one, but this was one of those cases where based on the special interrogatory, there was really no way for this plaintiff, for the plaintiff to win in this case. And I'll talk about that in a little bit. As to consistency, as long as there's a reasonable hypothesis that the answer to the special interrogatory is consistent with the general verdict, then the special interrogatory is not going to trump the general verdict. There has to be absolute irreconcilability and all reasonable presumptions have to go in favor of the general verdict. And in addition to that, it has to be absolutely irreconcilable with every theory of negligence that was sent to the jury on the general verdict. This court decided the Lancaster v. Galeon case, I think it's directly on point. It was a case where there was an objection to the interrogatory because it was a misstatement of the law on misuse. There was also on appeal, the plaintiff argued consistency. The appellate court in that case did find that the interrogatory misstated the law on misuse, which I'll talk about that in a second. And it also found consistency because it said what the jury had to do to arrive at their finding on the general verdict and the steps that they would have had to go through and the determinations they would have had to make are basically the same as their answer to the question of misuse and that they would have been consistent. So in that case, this court found that there was consistency, that it was issued in error, and they overturned it or they held that the decision on the special finding should be reversed in judgment and on the general verdict. Since you're talking about cases, I'm sorry, I'll let Justice Berg answer questions. When you're done answering his question, since we are on cases, I'd like for you to distinguish the Garcia case. Sure, I will do that. My question was surrounding Garcia too. Do you think that the trial court was bound to give the special interrogatory in the form that it gave it? I don't believe the trial court was bound. I know it was the only quote-unquote case out there, a suicide case, having this type of instruction, but that really wasn't a suicide case, and I guess I can address the distinguishment there. The theory in that case was not that the plaintiff committed or that the decedent committed suicide. The theory in that case was that the defendants failed to provide a safe place for the decedent, notwithstanding everything they knew about his mental and psychological issues, none of which was a risk for suicide. Suicide was a defense in that case. It was not the issue sent to the jury by the plaintiff in that case. The other difference with Garcia in this case is I'm going to call Garcia was a back-end case, and I would say this is a front-end case. And what I mean by that is, in Garcia, there was no dispute that the defendants had everything they needed to know as far as diagnosis, the risk factors from the diagnosis, all of that. The issue was that they provide a safe place with those known risk factors and known diagnosis. There was no issue like they failed to diagnose or assess or things of that nature. In this case, this was a front-end case. By that, I mean Mr. Stanfill walked into Ms. Orberg's office and said, by virtue of a self-assessment, I feel like harming myself or others most of the time. I feel out of control most of the time. He basically told her he was suicidal. That triggered all of these steps that she had to go through by her own expert's testimony, by her testimony, and by our expert's testimony. She had to do a proper assessment, diagnosis, all of these things. Well, what happened in this case is the jury found she didn't do those things based on the evidence. So she had a lack of knowledge as to Mr. Stanfill's condition and the risk factors because she didn't do what she was supposed to do. Therefore, it was inconsistent. Can we go back to Garcia? Yes. Is there something that bothers me about what you've said in relation to the case? And that is, I don't remember whether Mr. Garcia was ever attributed with knowledge that he was on the fifth floor. Do you happen to know? I don't know. Because if he was trying to get out of a first-floor window, then I don't know that he was committing suicide. That was the plaintiff's point. Well, I'm not even sure that if he was trying to get out of a first-floor window, he was necessarily placing himself in a dangerous condition. So, attributing any mental state to him, a blind man who supposedly is irrational, and the fact that he died by falling five stories causes me to pause when I'm trying to figure out how he knew that he was on the fifth floor unless he was rational while going up or down an elevator and counting the dings. Because I don't think people say, Are you enjoying your stay on the fifth floor today? So, Garcia is a case that seems to be vacuous in the sense that there are one or two salient facts missing that would give me some insight as to exactly what kind of theory would have been most appropriate under the circumstances. I don't disagree that it's vacuous and it doesn't apply to this case. And I can't answer all of your questions there. I do know that he was a paranoid schizophrenic. No one can ever answer all of those questions. I'm trying, but I just think that it's so distinguishable because the theory in the case was not suicide, as it was in this case. And the theory in the case was not misdiagnosis, failure to evaluate things of that nature. It was purely a failure to protect him with no risk factors. So, if that answers your question. And in this case, keeping in mind that Ms. Orford admitted that she did not believe that Keith Stanfield was suicidal. All the issues sent to the jury, failure to assess, recognize, diagnose, the jury came down with the decision that she was negligent in not knowing based on what a reasonably careful social worker would have done and would have known and should have known. And so, if you take that, that the jury said, she failed to recognize he was suicidal and she was negligent. Failed to properly assess him and she was negligent. Failed to properly diagnose him. That is the same thing as saying, there's no way this woman could have foreseen his suicide. Her admitting that. When the client committed suicide, how many days was it until he was supposed to have an interview with some medical expert or clinician? I believe it was the following Wednesday. She saw him on Friday. Say that again? Yes, Ms. Orford saw him on a Friday. And I believe the next appointment was on a Wednesday and that appointment was maybe made on a Monday. The following Monday, the following Wednesday. And he killed himself on a Tuesday? He killed, we believe he killed himself the following Friday. The last time anybody ever heard from him was the Thursday after Ms. Orford's appointment. Did the partner give the date of death? They found him on a Monday. So that would have been the date of death. Or like a week and three days, right, after she saw him. But the last time anybody had spoken to him was on a Friday. They didn't try to backdate his date of death based on post-mortem examination. But when it comes to, again, consistency, I think it is clear. She didn't think he was suicidal. So how in the world could a jury answer yes to whether she could foresee he was suicidal? The jury found that she failed to do everything, including recognizing he was suicidal. So how could the jury ever answer, of course the jury is going to answer no, that she couldn't foresee the suicide. These are completely consistent. At the very least, a reasonable hypothesis exists such that the special finding cannot trump the general verdict. If I understand what you just said, you're saying that because she was negligent, it is axiomatic that she would not have foreseen that he was going to commit suicide on any date at any time? From a subjective standpoint, absolutely. Based on the theories we've seen to the jury. So the question is, is this to be interpreted subjectively or objectively? Correct. The way the jury was asked the question, it was a subjective question. The way it shouldn't have been asked was an objective question. They said that the special interrogatory wasn't foreseeable to Lori Ortberg. Absolutely not. Why was it foreseeable to a reasonable person or a reasonable social worker? Exactly. And that gets to my next point that it misstated the law. We argued the whole time during jury instruction conference that the jury could find it wasn't reasonably foreseeable to her because she didn't do her job if they find in our favor on the general verdict. Then you get to the city of Chicago versus Beretta case, Illinois Supreme Court case, that makes it very clear that foreseeability, legal cause, is tested by an objective standard. What would a reasonable person in the business of the defendant likely foresee to be the likely consequences of his conduct? It made it very clear that you don't test foreseeability through the eyes of a negligent defendant. And that's what happened here. If this case were to stand and we allow foreseeability to be tested subjectively, then when in the world is there ever going to be foreseeability in a negligent diagnosis assessment case? It's kind of like, you ever hear the saying, you can't dream something you've never seen? You can't foresee something that you never identified to be a problem to begin with. Can you read these together as the defense? I believe I use, I don't want to put words in your mouth, but can you read the instruction together with the special interrogatory and read the special interrogatory to say was it reasonably foreseeable to Lori Ortberg as a reasonable licensed clinical social worker? I don't think you can, Judge, because they've been given the standard to assess negligence, right? And then they come and they determine negligence using that reasonably careful social worker standard. They've already determined Lori Ortberg is negligent. Then the next question they're asked is, well, did Lori Ortberg, the person you've just determined to be negligent, could she reasonably foresee a suicide? The instruction is very clear. Was it foreseeable to Lori Ortberg? I don't think you can imply that a reasonable standard, a reasonable person standard was implied into that interrogatory when it says to Lori Ortberg. And the other point I would make on this, during the instruction hearing when we're talking about all of this and how, you know, it can't be through her eyes, and the judge, Judge Prochaska, says, well, yeah, I mean, it doesn't have to be her, but then he's kind of like, well, I guess it does. And I think he's looking at the Garcia instruction. And defense counsel says that's the way it has to be. So we're talking about this as being a subjective standard. Defense counsel says that's the way it has to be. So this is exactly the way they wanted it without any implicit, you know, factoring in that they're going to be relying on a reasonable person standard when they're answering this question. Getting back to, so I think I put my point out there on consistency as to it being wrongfully error informed. Again, it didn't follow the law. Garcia didn't even follow Hooper, which was a reasonable person, a proposed special interrogatory, which was based on a reasonable person. I think in Garcia, I mean, honestly, I think the reality is that there was no objection to the phrasing of the interrogatory in Garcia of being a subjective standard. I'm speculating, obviously, but I think that that's probably why it went through. The appellate court's not going to be looking for reasons that aren't being raised, I presume, by the counsels to find some problem with it when the parties aren't finding a problem with it. Similarly here, defense counsel argues that you forfeited the formal objection. Not at all. If you look at the transcript of the hearing, notwithstanding what defense cited in their brief, which they only cited a very short portion of the transcript, if you look at the transcript of the hearing, there were pages of discussion, and it all centered around whether this is a proper instruction because how the jury could interpret it being subjective to Lori Ortberg when they could find that she didn't do her job. And there were pages of us talking about how this is improper. It doesn't test a verdict. There's an explanation for consistency here. We raised all of those issues. And in the Lancaster case, a similar objection was made, or a similar argument was made, and the court found that there was a specific objection made to the interrogatory that it was preserved. And moreover, even if there was not a form projection preserved, that when the form dictates whether or not it's going to control the case, you can't really parse these out because consistency goes whether it controls the case. In this case, form goes whether it controls the case. And the Lancaster court said we would be very hesitant to rule that there's a waiver of form when it goes to controlling the case. Moreover, we don't waive consistency, even if form is waived. I think you asked for a reversal rather than another trial. Is that correct? We did not ask for another trial. Do you need a reason for that? Long ago in a galaxy far, far away, in a case in the First District, somebody asked for a reversal. The appellate court determined they were entitled to a new trial. They didn't ask for a new trial, so the judgment was affirmed. So I pay attention to what careers for relief are. Because sometimes we can't break the fixed form. And that's all. I just wanted to make sure in my own mind that that's what I remember. And if I could just briefly respond, is that if you look at all the cases we cited, the appellate courts either reverse and remand and enter judgment on the general verdict where it's improper form or there's a consistency issue or they reverse it themselves and enter the judgment at the appellate court level. So Judge Prochaska said this isn't a case where we're talking about a new trial. Either should or shouldn't have been given. And he's begging you guys to basically reverse it. You don't have to follow my advice. But it always helps when you say or any other relief that the court deems necessary or appropriate. Okay. It's a savings clause. CYA. Understood. Okay. Thank you. Thank you. We'll be given an opportunity to make rebuttal. All right. Thank you. Mr. Griffin. Good morning, Your Honor. Good morning. There's a little information out here. I was the counsel in Garcia. I still may not be able to answer all the questions you might have about it. The basic point I need to make right away is that this interrogatory was not a subjective interrogatory. It didn't ask the jury, did Lori Hortford foresee the suicide? It didn't say, was it foreseen by her? No. It was, was it reasonably foreseeable to Lori Hortford, et cetera, that Mr. Stamford would commit suicide on or before October 9th? That's an objective test. Their Lancaster case, their Heister case, their Beretta case, they all say, when you're talking reasonable foreseeability, that's an objective standard. That's not talking about actual knowledge. It's what you could or should have reasonably foreseen. Well, when they questioned, I think, I'm not sure who was questioning the expert, Dr. Baudin? That was the plaintiff's expert. Right. That's the plaintiff's expert. But Ms. Postolan was questioning and said, okay, do you have an opinion as to whether she should have reasonably foreseen the suicide? He said, well, not the specific suicide, but that he was at risk for suicide that was foreseeable as part of her evaluation. So that's a little inconsistent with what you're saying. And isn't that something that the jurors could have inferred from that special interrogatory? That she did not foresee it and she was incorrect in not foreseeing it. Thus, negligence. Well, our expert testified that it was not reasonably foreseeable. Suicide wasn't. Dr. Baudin initially said, yes, it's reasonably foreseeable. That's the first thing he said. And then he was cross-examined and so the cross-examination took place as you're saying. But the law, whatever he said, doesn't change the law. The legal cause requires that the defendant reasonably foresee the injury that occurred. That was the essence of this question. And as in Garcia, it's a question that goes to a controlling material fact. It was answered inconsistently, yes, with the general verdict. But there's no real confusion. I mean, the closing argument, both counsel made it very clear what their position was on reasonable foreseeability. If I can just quote plaintiff's counsel, you're going to get a special interrogatory in this case. The judge already told you about that. And you're going to have to determine and sign whether it was reasonably foreseeable to Lori Orr on September 30, 2005 that he would commit suicide. The answer is absolutely yes. Without question, absolutely yes. So the battle lines were drawn. The testimony was in. And the jury had to decide it. Now they decided it inconsistently with the general verdict, but that's the whole point of the special verdict is to test that general verdict. Is the issue whether it's reasonably foreseeable to this particular person or reasonably foreseeable to a licensed clinical social worker acting in a reasonable capacity as that? Well, you know, I think on page 28 and 29 of our brief, to answer that, we just quoted a lengthy list of cases where the courts in each case said you know, the test is was this reasonably foreseeable to the defendant? The vast majority of the cases you cite talk about reasonable foreseeability to the defendant as it relates to the legal issue of duty not the factual issue of proximate cause. Well, the Beretta case, I know they rely on Haley, and on page 410 of the Beretta Supreme Court says we're going to the excerpts illustrate the questions of the existence of a duty and the instance of legal cause both depend on the analysis of foreseeability. Thus, in the present case, the question is whether the defendants could reasonably foresee that the guns they sold would be used in a way that would create a public nuisance. So, I believe that if the interrogator had been worried, as you say, I'm sure the plaintiff would be up here saying, well, Judge, that doesn't solve anything. The only person that saw Mr. Stanfill was Lori Ortberg. It's only her conduct that's at issue, not some other reasonable, careful social worker. Right, right. So then wouldn't that make the answer of no consistent with the verdict because it was just her? Only if you rewrite the interrogatory, take out the one reasonably foreseeable and say, was it foreseen by Lori Ortberg? No, of course it wasn't. In most negligence cases, the defendant never foresees the outcome or you'd be talking Wilk of the Lawton or intentional conduct. Well, if she had perceived that it was going to happen, wouldn't that be Wilk of the Lawton? Right. You'd be in another bar. We're talking punitive damages now, right? Absolutely. So, this is the way we test whether or not the person could, in the language of Beretta, or should, in the language of the court. You know, the trial court said at one point, this whole trial is about whether she should have perceived the suicide. It's throughout the record. It's page 1986. That was the whole trial encapsulated in that special interrogatory. And it's inconsistent with the general verdict, admittedly so. And they somehow want to kind of combine the two and take all the findings in the general verdict as gospel and put them into the special interrogatory. But that's not how we do it. That would upset the whole process under 2-1108. I mean, you have a general verdict, okay. Now we look at that special interrogatory. In itself, it's a complete question. It goes to a material fact that controls the case. Here's the answer. Is that consistent with the general verdict? No. Why did you need that special interrogatory? Because, I mean, why does any defendant want a special interrogatory? I know why you want it, but... But, I mean, you know, this was an emotional case, obviously. And, you know, as the courts have said, a special interrogatory allows the parties to hone in on a specific clinician that may not have, you know, may have been lost in the overall general verdict. In your brief page, I think it's 13-14, there's the questioning of the Dr. Vaught and the expert for the plaintiff. And then the judge even jumps in there and starts asking questions. Was that your opinion? That she should have been able to foresee that he was at high risk for suicide? And he goes on to answer and then hostile and asks something else and then there's an objection and then the doctor said, that's not really what I said. I mean, how could this not be confusing for a jury? It's confusing for me when I'm reading this trying to wrap my mind around what is trying to be said and when you read this in conjunction with that special interrogatory, do you concede that there are some that it is a bit confusing for an average juror? Well, as far as his testimony, as for whether his testimony was confusing, you could argue about that but that doesn't change the nature of the question and our expert's testimony was clear, it was not reasonably foreseeable for numerous reasons. He didn't have a suicidal plane, he'd never made an attempt before, no family history, he was still working, he was getting pastoral care from his father-in-law, living with his father-in-law, a close relationship, seeing his children, etc., etc., etc. So the fact that their expert kind of maybe first he said it wasn't really foreseeable now you're quoting some cross maybe he wasn't that happy with it confident in his testimony that didn't take away the issue that all went to the jury everybody got to argue it and as I said the plaintiff told the jury you've got the evidence on reasonable foreseeability you've got to answer that yes and so I don't think there's the fact that his cross may be ambiguous I don't think changes the element issue in the case, doesn't change the evidence in the case that doesn't change the jury's answer but perhaps it wasn't reasonably foreseeable to her because she didn't see the signs of suicide could the juror interpret that thus coming up with an inconsistent... well you'd have to take the word reasonable out of it and ignore all the law that's in both our briefs I mean on page 35 of their brief they admit reasonable foreseeability that's an objective standard I never understood how they're saying this is a subjective interrogatory well you put her name in there does it make it subjective? as opposed to putting a psychologist or whatever she is well was it reasonably foreseeable to her that's a question that brings in not that she know it he didn't know it, he didn't foresee it we all agree with that should she have foreseen it that's the question we ask almost in every negligence case when we talk about reasonable foreseeability and the defendant's conduct unless the judge says we're talking about Wolf and Wadner, detentional conduct then we may get further into it but when you say reasonable they're taking that word out they're rewriting it it's not taking the word out but adding the person's name creates confusion perhaps when it need not be in there the Garcia case relied on Hooper Hooper didn't have anybody's name in there so again I don't know where we get this name has to be in there when Hooper just said was it reasonably foreseeable that she would commit suicide well judge if that had been the interrogatory they might have an argument that would make some sense because there was a lot of people in this case reasonable people for example her family who saw Mary Davis and said did you foresee this coming? if it hadn't been pinned down to Lori then I think the argument would be this doesn't wipe out the general verdict it says reasonable people and there's a lot of reasonable people in this case that didn't foresee it then you'd be into that line of cases where the interrogatory didn't knock out the charge was the decedent scheduled to see any other medical professional relative to his mental state subsequent to the 30th of September Mr. Dasenbeck he had an appointment to see Mr. Dasenbeck the next week I thought that was a marriage counselor yes I'm sorry I don't think a marriage counselor is considered a medical professional okay okay so he did not so why is October 9th honored before in the instruction or the interrogatory well that was the date I mean he was found on October 9th and argument it was unclear whether he died that day well wouldn't that imply that I figure out what the numbers are for a given date of the lottery for instance I could pick 6 numbers and over a period of 7 drawings or 8 drawings each of those 6 numbers would be picked when you decide you're going to pin it down to a particular date it becomes much more difficult because the odds are a product of each particular number when you say honored before October 9th all you're asking to me the way this is interpreted is was it reasonably foreseeable that this man was going to actually commit suicide on the 9th of October or before as opposed to what I think might be more appropriate was he going to commit was it reasonably foreseeable that he was going to commit suicide before he consulted with another medical professional who supposedly would then based upon that opinion would be an intervening cause and would terminate the proximate cause because my recollection is is that it was claimed that if she had done her job and sent this man to the hospital then a doctor would have interviewed him and would have determined as a doctor whether or not this man was suicidal and it would have not have made any difference whatsoever as to her opinion because his opinion superseded hers that would have been a long special introduction they're supposed to be simple, clean and concise I mean I think it was just and I do have to make a point that Justice Burke made there was no formal objection to this except when we first tendered it it said but that isn't the point it's not a question in my opinion whether or not there's an objection the question is whether or not the format or the form of this interrogatory answered in the negative is completely inconsistent with and contradictory to the general verdict because there could have been no objection at the trial court and if it said that would Joe Blow have reasonably foreseen that sometime in the next 10 years he might have committed suicide it wouldn't to me necessarily mean that this is inconsistent with the general verdict I agree with that in terms of 10 years out but now we know the actual date and we know what happened before she got to see so you put the date in there and this is the fact this is the injury you know what a negative verdict is? probably not I've got 5 kids so it's a test that she comes back negative but anyway it means that when you answer an allegation and a complaint if you don't deny the fact that you if the complaint alleges you owe $10 and you deny and say we don't owe $10 then the negative could result in a judgment for $9.99 so you're supposed to not only deny $10 you're supposed to deny any liability whatsoever and the way this thing is written it doesn't cover the period of time from the 9th of October until such time as some other medical professional reviewed this individual because to me it's pure speculation to say that is it reasonably foreseeable that he would have killed himself the next day probably not the further you go on into the future the probability seems to me to increase until such time as there's an intervening medical professional who will opine as to whether or not the person is or is not suicidal do you see what I'm getting at or not? I see it but I don't know that it's I guess we know what happened so we know the date of death and so now we're being the court's being sued for that death on that date and so I don't think it's conceivably error to put in there the date it happened I was just saying hey this happened shouldn't have been reasonably foreseen by her but if he killed himself on the 11th are you telling me that this interrogatory would indicate that he was she couldn't be liable the defendant should be the judge should be entered in their favor because if he had died on the 11th but this was the 9th then the interrogatory should be rewarded my point is this isn't covering the entire scenario that is possible but it's covering the entire scenario of what happened so to me I don't know how you ever because I think it's just you know how many lines would you have on your special interrogatory it seems like you'd have to cover every conceivable theory that you could think of well if you remember Garcia talked about both aspects of both suicide and the possibility of the individual harming himself and it went to great lengths to point out that the interrogatory was appropriate because it covered all aspects all theories of liability and so the point is that when you start talking about all theories of liability the proximate cause as a matter of fact could exist up until such time as the decedent conferred with a medical professional who either confirmed that he was non-suicidal in which case that person probably would have been sued instead of this person or would have determined that he was suicidal and would have institutionalized him in which case it would moot her liability unless of course somebody could claim that her diagnosis acerbated and aggravated his pre-existing condition I agree I mean but again I don't think that affects the correctness of the interrogatory which in Garcia I'm sure you know was written in the same fashion was it reasonably foreseeable that Lee Manor would commit suicide or reasonable foreseeable to Lee Manor that he Mr. Garcia would commit suicide or act in a self-destructive manner on him before October 1st, 2004 and you're right the big issue in that case was elopement he wasn't we should have foreseen he might run a rope out of the window but there's no significant fundamental difference in the cases the psychiatric staff never evaluated him as suicidal or as an elopement risk I don't know how they did it quite frankly when every time they do it he's looking at the window and trying to get out of the window but but again some people testified I believe that they didn't think that the windows could be open so if that's a reasonable conclusion then they wouldn't be negligent in in not doing something that they've been informed it will be well in this case we're left with an interrogatory material questioning the fact it controls the general verdict the trial court clearly followed the law and your judgment on that special interrogatory we request you to affirm that judgment I gather you disagree with the trial judge's analysis of Garcia and the fact that it was wrong and so on and so forth well it's funny because I do disagree with it but when he gave the instruction in the instruction conference his view of it was that it was again the whole trial's been about whether she should have foreseen this he thought it was a proper thing to do he didn't think it was slandering toward the defendants now again I agree he made some comments in his post trial that indicated he didn't think it was proper but I respectfully submit that he correctly did follow the law and that the law would require an affirmation based on that special finding Thank you Mr. Thank you. Ms. VanderLie Thank you. Just a few quick follow up points I want to make This was a subjective standard in the special finding. There's no doubt about it. When you put Lori or Bergesdame in there it made it subjective I want to just a couple things that the Beretta court said It said this is on page 395 The proper inquiry regarding legal cause involves an assessment of foreseeability in which we ask whether the injury is of a type that a reasonable person would see as a likely result of his conduct It goes on to state that the appellate court in that case mentioned a defendant's ability to foresee certain results suggests the appellate court was engaging in a policy based legal cause inquiry However, because this inquiry looks at what a reasonable person would foresee as a result of his conduct not at what this specific defendant knew or should have known the appellate court's conclusion does not properly dispose of the question of legal cause. Very clear foreseeability is tested by an objective standpoint and not as this interrogatory did. What did Lori or Burke foresee? And that's what this is determined. One of the things that counsel mentioned, so I would just say this too, they indicated that as written, now it's an objective interrogatory. They keep changing their argument. At the trial and at the instruction hearing, it has to be this way. It has to be with Lori or Burke's name in it foreseeable to her. Now it's an objective interrogatory Every time you mention this though, you leave out the word reasonably, which counsel focuses on, and that is whether it's reasonably foreseeable to her. Absolutely I mean, reasonably foreseeable to her is still through her eyes Was it reasonably foreseeable to her through her eyes? Would you have a better argument if it was, if the interrogatory was given consistent with Hooper? Say that would I have a better argument? Counsel says that, I mean, I called his attention to the fact that in Hooper the person's name was not mentioned. Right. And he said that plaintiff would have a better argument if the interrogatory was given as it was given in Hooper, because then it would just open up to the whole world. Who is it reasonably foreseeable to the whole world? Not necessarily the defendant on trial. I don't think we would have a better argument. I think the defendant would have a better argument because that would be a reasonable person standard. And because of the testimony Absolutely, but in reality in this case, as Judge Prochaska said, the whole general verdict was based on whether she foresaw Right? The suicide. That's what it was based on. So the special interrogatory when they said no is completely inconsistent or completely consistent. Sorry. And I would like to remind the court, I know you already know, but all we have to show is a reasonable hypothesis. We don't have to negate a reasonable hypothesis of consistency and I think we've absolutely shown that before this court. The last thing I wanted to touch upon is that counsel had mentioned during closing argument that I had you should answer yes and it's absolutely foreseeable. I didn't have a choice. The court had already determined what would happen if there was an answer of no to the special interrogatory, meaning we lose. So I didn't have a choice but to argue that because that was the framework in which I was told the instruction is going to be executed. Had I argued answer no and it came back no I would be having to explain myself why I should, you know, why I should be able to now claim it's improper when I told the jury no and I'd probably be dealing with issues beyond what I'm dealing with on appeal here. So I don't think I had any... You would also allegedly be inviting error. Okay. If on appeal you would be claiming on appeal that the answer no is error. Okay. So in any event, we feel that we have shown either consistency, a reasonable hypothesis alternatively that the instruction shouldn't have been given, but in either case in the Illinois Supreme Court case in blue and the Lancaster case and all different cases we cited, when that happens in either one of those circumstances the appellate court either reverses and enters judgment on the general verdict or it remands for the trial court to do so. And we would ask for that relief in this case. Thank you very much. Unless you guys have any other questions. Any other questions? Thank you. Court's adjourned. Cases will be disclosed of in as orderly a fashion as is reasonably possible for this particular panel.